United States v. Alexander Just wait one second All right. So, Mr. Williams, you're going to lead off? I am, Your Honor. You're going to go for five minutes, but you reserved a minute for rebuttal, so that gives you four out of the gate. That's right. And after that, we'll hear from Mr. Srebnick. Am I saying that right? Perfectly. Thank you. Okay. All right. So, Mr. Williams, the floor is yours. So, may it please the Court, Your Honors, I would ask you to focus on two factors here from the outset. The fact that my client, Tarr Alexander, has not been in trouble from the time, from the last alleged act, the conspiracy, all the way to the time of arrest, four to five years. Secondly, he was very well aware of the investigation. There was a Wall Street Journal article, this is all on the record, starting in, I think, July of 2024. And according to Agent Atwood's testimony during the bail hearing, she detected no movement or anything that would indicate that he was making plans to flee. And the relevance of those two points is that you think the district court clearly erred in thinking that the danger had not dissipated and that there was a risk of flight. Yes. I'm asking the Court to look at it through that prism. Because the lower court, the district court in this case, had an obligation to consider all possible conditions to ensure appearance in court and safety to the community. And removing the Boustany issue, which I'll get to in a second, concerning private security, removing that from the equation of calculus, there was more than enough in terms of the bail package that was offered to ensure that my client would appear in court and would not be a danger to the community. The bail package that was offered seems to me to concede that the only way that the community can be protected and flight risk can be avoided is by a system of 24-hour surveillance by armed guards. No, Your Honor. Respectfully, let me clarify that. You're not really conceding it, I guess. That's just a bail. This is like plea bargaining. You're not conceding that you're guilty, but if you were to concede it, this is the terms on which you would propose. We tried to offer everything under the sun, so to speak, so that bail would be offered. But when it gets to the Boustany issue, I mean, isn't it the case that what we're talking about is only where, not whether, they should be detained? Well, Boustany has a – my understanding of Boustany, and yours obviously controls, is that with regard to private security, it is appropriate where it's deemed that the reason why the defendant is considered a flight risk is because of their wealth. What I'm doing right now is I'm removing the private security and saying there's more than enough based on – Even if they didn't have the wealth, if they didn't have the wealth, there would be no reason to think that they were dangerous or a flight risk, right? That's your position? Yes. Well, the district court found otherwise, right? So the district court thought – I mean, first of all, there's a presumption that when you're charged with sex trafficking, that you are going to be a danger and you have to overcome that presumption. And the district court thinks, given the pattern of conduct and how long it occurred, that there was a danger. And also thought that there was a risk of flight based not purely on the wealth but on international contacts and the seriousness of the charges. So we have to decide that that's clearly erroneous in order to determine that we're in the Boustany exception, right? Yes, and I would also – So why is it – why is it so wrong that we should overturn those findings? Well, Your Honor, I would point to Fox, which I understand is an unpublished – a published decision. But there you had not only sex trafficking allegations – There you had the district court deciding. We affirmed an exercise of the district court's discretion to grant the private detention alternative, right? Yes. So that's kind of different. And we said it was a really close case. I was on that panel. Right. I remember agonizing over whether we could bring ourselves to affirm it. And understanding that great deference is given to the district court, which was made clear in the Fox case, I'm pointing out that there is precedent. There's still precedent, although you gave great deference. There's quite a lot of precedent in the district court. I mean, notwithstanding Boustany, it seems – I was impressed by the research you folks had done at how often this is actually granted. The other case I'll point to, because I'm running short on time, is Wigand, which was decided by Judge Rakoff, and discussed this in the context of a defendant who had minimal ties and had strong ties to Germany. But if the district court did not err with respect to dangerousness, all of this is academic. Well, I would submit that the district court did err with regard to – you've got to get over that hurdle before we even talk about Boustany. Boustany is just an interesting footnote if you don't prevail on the dangerousness point. Right? And again – yes, agreed, Your Honor. But again, the salient factor that I would point to with regard to the dangerousness is the fact that my client was out for about four to five years from the last act alleged in the conspiracy to the time of his arrest, and there was nothing that was detected in terms of criminal activity. So what – so your view is that a rapist who has not committed a rape in five years is not dangerous? What I'm saying is that that's indicia, looking everything in the light. Before it considered that fact, that argument was made and was ultimately rejected, given the number of incidents over the long period of time. So how would – I mean, we would have to say that the district court blew that one, that no reasonable fact finder could consider this to be – that your client was dangerous, right? Yes, and based on the absence of any activity for about a four- to five-year period. What I would submit to the court is that if the government's alleging that my client, Alexander, was a serial rapist and a sexual predator, individuals with that kind of background and that kind of mindset don't all of a sudden stop for five years out of the blue. He's married. He has a child. And there is nothing in the government's case. What's interesting about what you just said is you're saying, therefore, the inference should be that he's not guilty of the charges, right? No, the – If he were guilty, he wouldn't just stop for five years. Well, that's one argument. But the inference is that in this case there's a combination of factors here that can ensure that he's not a danger to the community. I get the factors, you know, and that's the Busani question. But just on the dangerousness, you said a moment ago that the four- or five-year gap in misconduct is just one of many things. So what are all the – like what's everything that we put together to determine the district court clearly erred in its dangerousness finding? Well, the five years and the weight of the evidence here is not as strong as the government's alleging either. Both factually, there's no corroborative evidence. You just have victim testimony. And the victim testimony, although looking in a light most favorable to government, there's been so much publicity here, and there's been a number of news articles which demonstrate from our standpoint that the victims, the alleged victims, basically influenced one another without really having a clear recollection. Also, the legal theory here is also very novel with regard to swapping luxury travel for a sex act. Based on my understanding of the law, the commercial – the thing of value has to be offered in exchange or on account of a sex act. You don't really have that here. But that's a risk of flag argument, right? That's not a dangerousness argument. Your technical defense to charge doesn't mean that the person's not dangerous. Well, the technical defense shows that there's – That suggests there's no reason to flee because you've got this ace-in-the-hole technical defense. But it doesn't mean that one is not dangerous. But, Judge, there's – other than the government relying on the victim's testimony with no corroboration – What is it that you're saying the district court overlooked? Or what are the factors that suggest that this person is not a danger? And I don't think the technical defense is relevant. So if I was to answer your question, what the district court overlooked is, in my opinion, is the Fox case, the absence of any activity on my client in five years, and also the – So the district court, you're saying, didn't understand that? The district court made a statement that suggested that the district court seemed to think that the last act was yesterday? It seems, based on what I recall and read the district court saying, is that the district court was very concerned about the Bustani case and the fact that private security, you couldn't basically – defendants couldn't buy their way out of jail, essentially, while – But you can't. Dangerousness is the ground on which bail is being denied. You can't say, I know he's a danger. He's Jack the Ripper, but he's got enough money that we can put him in a gilded cage. Bustani says you can't do that, right? That's right. Yeah. But there were other – there's other conditions to ensure that the defendant, Tal Alexander, is not a risk to the community. Conditions that don't rise to the Bustani level? You're saying the district court made a mistake in saying that the conditions that were proposed were, like, extravagant? Yes. So in other words – I mean, it is 24-hour private security. It doesn't –  Understood, Your Honor. What I'm saying is Bustani does not necessarily have to apply here if you remove the private security. I'm saying there's more than enough, including the fact that the family is willing to offer up their entire – all their assets so that if one of the defendants, any of the Alexander brothers, were to flee, the family would forfeit all their assets. And so there's a combination of factors here, and I'm thinking of the Berrios case back from 1986, that would ensure that they appear in court and that they are not a danger to the community. So somebody who did not have a high level of wealth who was accused of this kind of conduct, you're saying would not – you know, would not have been detained? Yes, and that's where I fall back on the Fox case. Why would that be? Because in the Fox case, and as Judge Lynch pointed out, the Fox case is where we said the district court didn't clearly err in saying that because of the gap in time, there wasn't a danger. Maybe, you know, let's say you've persuaded me that if the district court had made that finding here, we wouldn't say that that was clearly erroneous. But if the district court made the opposite finding, the Fox case doesn't require us to tell us that it's impossible for somebody to pose a danger just because there's a gap in time between the last charge and the present, right? Yes, but I'm – So what is it about this case that does compel that conclusion? It compels – The conclusion that they're just not dangerous, that there's just no way. Well – It's not a matter of – It's not within the district court's discretion. It just is a clear conclusion. Well, at the risk of being circuitous in my argument, I'm looking at Fox, which was decided after – and I understand that the deference was given to – I think it's Judge Ballard there. Judge Ballard, yeah. I understand that. But Fox is so close in terms of facts, and the facts there are worse. And in that case, the Court noted, if I remember correctly, that a year – It was only a year between the last alleged criminal activity on behalf of Mr. Fox. Yeah, you know, Fox was a weird case. The government, let's put it delicately, made various representations to the Court that turned out not to be the case. There was a suggestion that he had been continuing to engage in involuntary S&M activities with escorts. And then it turned out that the picture, that the date stamp picture, was actually of his girlfriend who testified under oath that she consented to all of that activity. You know, every case turns on its own bottom when you're talking about these kinds of determinations. And I just don't see how Fox helps you other than, you know, what strikes me about Fox and all the other cases in that footnote and one of your briefs is that it's remarkable how often people who get these conditions don't flee, don't, as far as anyone knows, engage in further criminal activity. You know, it often seems to me that the predictions that the government makes may not be all that reliable. But still, none of that goes to the question of did the district court clearly err in exercising its judgment about the facts here. That's what the question is. And Fox was the same standard applied to, as it were, a more generous district judge. I understand. All right. You've got your money's worth there, Mr. Williams. But we'll now hear from Mr. Stripley. Hoping I don't get shortchanged by Mr. Williams, but Judge Lynch, the question under the Federal statute is not whether there is some evidence, whether strong or not, of conduct that occurred in the past four years as to Elone Alexander eight years ago. The question is, is there some basis on this record to predict that they will resume the conduct that has not happened in four-plus years, again, eight years as to Elone Alexander? It cannot be that the government doesn't think it can prove beyond a reasonable doubt. There is no such conduct in the last eight years. The government hasn't even alleged conduct. There's not a single accuser who said that in the last four years as to any of them and as to the last eight years as to Mr. Elone Alexander. If this were bank robbery, I don't think you'd be standing here making that argument. I'm sorry? If this were a bank robbery case and there was somebody who had a long record of robbing banks and the last one, the one that's charged in this case, is barely within the statute of limitations, I'm not sure that anyone would be making the argument that, oh, he's reformed, he's not a bank robber anymore. The issue isn't whether he's reformed. The question is whether we can fashion conditions that will reasonably assure safety and appearance. The last four years, there's no allegation of unsafety. There's no allegation of any criminal activity by these defendants. So I think conceding all that, I guess the point is if Jack the Ripper gets caught and he hasn't ripped anybody in four years, your view is that there are conditions then that can keep the community safe? It's terribly unfair to refer to the Jack the Ripper as an example in this case. Well, I'm just trying to reduce this to the temporal argument you're making. Let's use the examples from this court. We have a mafia affiliate by the name of Esposito that came before this court, Esposito, decided by this court. He was released under house arrest. And to answer your question, Judge Lynch, the statute specifically provides that a defendant, in lieu of going to a jail, may, quote, remain in the custody of a designated person who agrees to assume supervision. So the statute does contemplate what the court likes to call a private jail, what I prefer to call home incarceration. But it seems to me here you're really arguing that Bustani was wrongly decided. It was wrongly decided. Okay. But we're bound by it. But we fit within the exception of Bustani, because on multiple occasions throughout the district court proceedings, the government emphasized that it was the wealth of the defendants that would allow them to pack a bag. Could you articulate for me who is similarly situated but poor? Say again? You're saying someone who is similarly situated but not wealthy. But, of course, someone who is not wealthy is not similarly situated. What about someone who was poor but, let's say, is a former CIA agent who specialized in mission impossible escapes of people in custody in some other country, and now has close connections to the president of Belarus? You know, that kind of – there are things, one of which might be having access to private planes and private yachts, that make a person more likely to have the capacity to flee than someone who is otherwise similarly situated with the same ties to foreign countries and so on, but has no money and no ability to get out of the country. So, Judge Linsch, if it was Jason Bourne or Ethan Hunt that was before you, or El Chapo, you'd be concerned that these are escape artists, these are highly skilled commandos who could not only evade house arrest. Yeah, but it's a little easier to evade the detention of armed guards that you've hired, and a couple of them, than it is to get your way all the way out of detention. Of course. Indeed, people escape from detention. We saw it in New Orleans. Of course. Government detention. Of course, but there's no indication that the Alexander brothers, born in the USA, educated in the United States, employed in the United States, married with children, are Ethan Hunt or Jason Bourne. This is now creating a fanciful scenario. Can I interrupt just for a second? Because it seems to me that Boustany is really focused on risk of flight. We're talking about danger here. So if your client and his co-defendants are deemed dangerous, then you can't get a private jail under Boustany. You just can't, right? I disagree because that was the Esposito case. Esposito was the mafia man who this court approved house arrest because of those conditions could mitigate danger. Boustany is 2019, right?  And so, I mean, Boustany is saying, unless the private jail is conditioned solely because of the person's wealth, that's the exception under Boustany. Under Boustany, if wealth was a contributing factor. Wait, a contributing factor? Not contributing factor. Was the factor. No, primarily. The word is not primarily. It's primarily because of wealth, the defendant, the court deems the defendant to be a risk of flight. Right, right. But this is a case where danger is the or a primary reason, right? Forgive me, Judge. The two magistrates who heard this case in the first instance found danger was not a basis to detain. Judge Caproni, with no additional presentation, overruled the two magistrates on the dangers. By two magistrates to outweigh one district judge, is that how we decide these things? No, but there's no additional evidence that was provided by them. Right, because different reasonable people could reach different conclusions, yes? Then under that scenario, the defendant should be released where the defendants can show there are conditions that would mitigate. No, no. Where reasonable people, a reasonable judge might think that, and a reasonable judge might think the opposite. Right. Then doesn't that mean that either way, whatever the judge does is not clearly erroneous? But the judge, Judge Caproni, never even considered, because she thought Boustany precluded altogether, whether home incarceration, electronically monitored, all phones and videos and everything monitored, and on top of that, private security. She's right about that, right? So if, in fact, she decides, she thinks, as she said she concluded, that somebody who did not have a lot of wealth would be detained, therefore, she does not allow under Boustany to entertain, you know, the use of wealth to create an alternative to incarceration. That's a correct statement of the law. Except that the only reason the government and the judge, as opposed to the magistrates, thought that these defendants could flee is because they had access to boats, cars, airplanes, and could fly to Israel and then have Netanyahu. We do say that risk of flight, you know, is shown by the seriousness of the charges or international contact, and that's something you don't have to be wealthy to have. And the district court thought that that created a risk of flight here. So why isn't that a finding that's independent of the wealth? Because it is rebutted by the facts presented by the defense that the parents who are here in court today are pledging their entire wealth. If any one of the brothers were to violate the condition, the parents would be left destitute, and there's no evidence that any of this is true.  Can I ask about the dangerousness? I mean, I take it you said that Boustany really is about risk of flight, but is there an argument that here the finding of dangerousness was also predicated on the wealth? I mean, I guess there was this discussion about, well, even if they're under house arrest, you know, the allegations are they could lure people into their house and so on. That seems to depend on the wealth also. So like how would — so let's say, you know, we thought that the dangerousness finding is also related to the wealth. Would that mean that it might fall within the Boustany exception? I think you could say that this case was about the claim the government makes that using wealth, the defendants lured women to date them. Now, under house arrest, with their wives and children, the idea that the men are going to lure more women to visit the house arrest situation and be victimized is totally make-believe. On the other side, you know, this is a case where there's a presumption that there's no — that there are no conditions that would assure safety, right? Yes. Because of the — because the crime is sex trafficking. In the average case of — the defendant in a sex trafficking case does not need to be the person who engages in the sexual abuse. So if we have a case where the defendant accused of sex trafficking is also the person who engaged in the sexual abuse, doesn't that mean that it's actually more serious than the average — than the average case in which Congress has said there's a presumption that there's a danger to the — Actually, for bail purposes, it's easier to make sure that there's no chance of future dangerous activity because the defendants under house arrest cannot commit the crime of themselves assaulting anyone because they're under house arrest with their families guarded by — Because the motive was sexual gratification as opposed to profit, it's actually easier to assure the safety of —   And so, the statute doesn't require that you would remove them 100 percent because you just removed them from the community. You put them under home incarceration, which is authorized by the statute. You put them in the custody of a designated person. The company, Kroll, where their former law enforcements are known to the judge. There was no question about the effectiveness of the private security company that was being proposed. And the judge never made a finding — And that's what the statute requires. The statute requires that there be no conditions, no combination of conditions, that could assure safety and flight. We propose conditions that will satisfy both of those. And for those reasons, the Court should grant bail. Is there no further questions? I hope I reserved a minute. Yes, you both have reserved a minute. We'll now hear from the judge. Ms. Arroyo. Good morning, Your Honors, and may it please the Court. My name is Kaya Arroyo, and I represent the government in this matter. After extensive briefing and argument, the District Court properly detained the defendants as both flight risks and dangers to the community. And this Court should defer to the District Court's factual findings here. Now, I want to start by focusing on the District Court's decision regarding danger. As the Supreme Court has held, where a factfinder's choice between two permissible views of the evidence is a choice — or is a choice between two permissible views of the evidence, our choice cannot be clear error. It's harder here in a case where there is a rebuttable presumption, where there is no condition or combination of conditions that could guarantee the safety of the community or the defendant's appearance at court. So I want to focus on Judge Caproni's decision here. She ordered the defendants detained based primarily on the nature and circumstances of the crime and the strength of the evidence in this case. For years, the defendants engaged in a pattern of violently raping and sexually assaulting victims. This happened in two types of circumstances. As women were being held down and screaming for them to stop, or after they had been incapacitated by drugs and were incapable of saying no. The government proffered at the time of this hearing that approximately 40 women had come forward with accusations related to the brothers. And in her ruling, the district court focused on the consistency of these accounts, despite the fact that these women alleged abuse over the course of years in different locations from women in different socioeconomic statuses. Can I just ask — and I don't think this has that much to do with the issue before us. I'm just a little puzzled by it. That woman who's held down and screaming is engaging in a commercial sex act? Yes, Your Honor. So — How? I mean, it just puzzles me. The — I understand the theory that if a defendant offers another person a luxury vacation rather than 50 bucks to engage in sex, and that sex happens. And that's a commercial transaction, but it's not a rape. But in these instances, it sounds like the defendants offered all of these inducements to get someone in a position to rape them. That's horrible. But it doesn't sound like anyone's engaging in prostitution in that setting. Can you just help me with that, just so I understand what the theory is? So we should focus on Section 1591 and specifically the definition of a commercial sex act in 1591e3. The government's theory of conspiracy and substantial sex trafficking charges fall directly within the established precedent, what a thing of value is within this setting. It's what a thing of value is, but doesn't it have — the thing of value have to be in exchange for a sex act?  So let's — let's focus on the phrase on account of. So the language specifically is that a commercial sex act is any sex act on account of which anything of value is given or received to any person. This Court in Ranieri specifically noted the broad nature of that — of that language. So that would cover — just that definition taken literally, you are saying, covers a situation where someone induces another person to go with them to a secluded place and then rapes them? Yes, Your Honor. Okay. I guess I understand that. I mean, I'm not saying I agree with it or don't agree with it. I just wanted to get in my head what the government's theory is. Yes, Your Honor. And I would point this Court to both Ranieri and several of the cases that the Court has cited in Ranieri in footnote 9, specifically Novell v. Weinstein — Weinstein v. — Geist v. Weinstein and Eckert v. Fox, which specifically deal with this — with this particular scenario and hold that the — that the plaintiffs in that case clearly stated a claim of a commercial sex act — of a thing of value being traded on account of a thing of value being provided. And so I would point you to that. But it wasn't traded. You're just saying on account — I mean, so here, the trips and transportation and everything was given because they intended to engage in coerced sex, but there wasn't a trade. Like, the recipient of the travel was not knowing — a knowing counterparty, right? Exactly, Your Honor. The defendants here entitled — Right. So, like, I get how that meets the definition of on account of which anything of value is given to or received by any person. But it does seem counterintuitive just in terms of the ordinary meaning of the defined term commercial sex act. And I think we have to look specifically at Congress's intent in passing this particular act and providing the definition that it provided, specifically noting the broad language that anything of value can be provided on account — or, sorry, any sex act that's — sorry, any sex act on account of anything of value is given or received to any person is broader than perhaps the stereotypical idea of what you might —  So it's — you don't — you think we shouldn't, you know, go with the sort of ordinary meaning of commercial sex act because it's a defined term? It is a defined term. Although, even in Rainier, like, somebody was profiting from engaging in the sex trafficking, right, because there were payments to people who facilitated the transportation of women. Here, the thing of value is given to the victim who, presumably, if she had known what was going to happen, wouldn't have accepted it. Right? So it seems like it's even further removed from the ordinary understanding of what a commercial sex act would be. Not based on the cases within this jurisdiction. I would look at Nobel v. Weinstein, and I would also look at Eckert v. Fox. But specifically, in Rainier, this Court was clear about what a thing of value actually could be. And it could be anything. That's not the issue that either of us are talking about, right? A thing of value could be something of sentimental value. It could be advancement in a job. It doesn't have to be cash. No one's disputed — that's not the question here. The question is the on account of or aspect of this. So then I would look — I would direct you to Nobel v. Weinstein, which is a very similar case. Okay. I mean, I have the argument. I don't really want to distract from what the issues actually are here. I was just trying to understand what the government's theory of the case is, and now I do. Absolutely. So going back to the district court's decision in this case and whether or not the defendants can show that the district court committed clear error in determining the defendants were both a flight risk and a danger, I want to focus on the actual things that she considered, which included not only the accounts of the victims, but also the significant amount of corroboration in this case. The record is replete with evidence supporting the district court's decision, and while the appellants disagree with the ruling, they cannot show that the court clearly erred, and accordingly, this court should uphold Judge Capone's decision, unless there are any other questions. So that goes to your saying the risk of flight was based on something other than the wealth, because it's about the seriousness of the charges. Yes, Your Honor. And I would direct you specifically towards pages 121 and 122 in the transcript where Judge Capone provides her decision. She doesn't actually get it. She doesn't actually refer to wealth at all in that discussion of why the risk of flight exists. That's correct, Your Honor. But a lot of the argument leading up to that is about the wealth, right? I mean, like the real reason why, you know, the government was initially worried about the risk of flight is because these defendants can get on private jets. They're accustomed to flying places at the last minute, and they have properties all around the world. I mean, isn't the real concern about wealth? No, Your Honor. Judge Capone discussed the defendant's wealth, one, in response to the defendant's arguments themselves, but also to note the ways in which the defendant's wealth can effectuate the other independent reasons why the defendants are a flight risk. And that's exactly the case. Yes, it's not just they have a lot of properties. They have properties around the world. It's not just that they're wealthy real estate brokers. It's that a lot of their business involves international transactions and might be transportable to a foreign country where the average element broker that advertises on the TV, the movie screens before the picture shows, are not really able to suddenly pick up and do the same job in Paris. Correct, Your Honor. Well, would that be sufficient to take it out of Boustany if the wealth is spread around the world or the wealth is concentrated domestically? Aren't those both examples where the concern about the flight is wealth? No, Your Honor. And if you look directly to the facts of Boustany, you can see that. The defendant had significant amounts of wealth, but the court in Boustany stated that wealth was one of many different factors. Here, Judge Capone can – I get the argument that, you know, even if they didn't have wealth, based on the seriousness of the charges and so on, there'd still be risk of flight. And so that's one argument, which I think the district court embraced. I guess my question is this. If the government were to say something like, well, the risk of flight is because of their wealth, but it's not simply because of their wealth. It's because their wealth is spread internationally, and that means they have international connections. That makes travel easier. You're saying they still wouldn't qualify for the Boustany exception because that wouldn't be about wealth simply? It would be about the location of the wealth? If I understand your argument, Your Honor, it's does the defendant's wealth in foreign countries relate to their risk of flight? And I would say that still wouldn't fall within the Boustany exception because the concern there is the defendant's – International ties. International ties. But it's really international ties because they have properties and access to private jets and so on, right? It's not just because they know people abroad, right? Yeah. Well, I think that still falls into the general bar within Boustany because if you look at Boustany itself, those – the money that's tied up in international wealth is still just one factor in which the defendants can use to effectuate their – So it depends on how much wealth you have, right? Isn't there a significant difference – people are not similarly situated – between an attorney who is licensed to practice in California and a computer engineer who can work from anywhere? They both may make the same amount of money. They both may have the same size bank accounts, but one of them has a greater capacity to pick up and leave the country and therefore the incentive that anyone might have to escape rather than be prosecuted for a serious crime is more likely to influence that person to leave the country than someone who would basically lose all his wealth and ability to earn a living if he had to pick up and go to Thailand. Yes, Your Honor. A defendant who has the greater ability to act on their inclination to flee is a greater risk of flight in that situation. I get that Boustany is binding on us and so we're going to apply it, but since there's a debate about whether it was correctly decided, I guess I just have this question. Where do we get Boustany from the text of the bail reform act? The reform act says you should order release unless there's no set of conditions that can guarantee the appearance. Are these conditions that can guarantee the appearance? And so where do we get the Boustany principle from the statutory text? So there are two answers to that question. First, do the proposed conditions ensure safety to the community and appearance in court? And the government's argument below is that no, a private prison would not be able to do that. Answering your second question. Even if there is no Boustany, you just don't think these conditions would guarantee the appearance. They wouldn't be sufficient. Yes. But the district court didn't say that. The district court said I don't even get to consider whether these would be sufficient conditions because of Boustany, right? Yes. And it reminds me of something that Judge Lynch said earlier. The bail package itself appears to concede that the defendants must be detained. It's a question of where they're going to be detained rather than whether they're going to be detained. And in Boustany, the district court.  It's an interesting question. Suppose I don't have a lot of wealth. I just have enough wealth to buy a flat screen TV and to be able to pay for a cable subscription for it. And I have a constitutional right to listen to MSNBC if I like to hear people engage in political speech opposed to President Trump. And I really want to listen to MSNBC. And my liberty is being constrained. It seems to me not so much by being detained, but there's a liberty that I have that is being constrained by being detained as a guest of the government in a facility where there's really no reason why I couldn't be allowed to have my own remote to choose my own TV station to watch. The reason why I can't have that is because I'm in a facility with a lot of other people. And so they have to be certain rules and they have to be restrictions on when guests can come. Right? So there are a lot of things you could buy that would generate less restrictive conditions of detention. And I'm just puzzled by why, you know, you can, if you're rich enough to buy the whole package, you know, not have to be awakened at 7 in the morning to get to court by 8 so that you can be, because some other guy who's going to travel in the same van has a 9 o'clock court appearance, but to be transported in your stretched limo. That you can buy not liberty as we normally think of it, liberty Plano that I can walk the streets. That's what happens with most people who are released on bail and on conditions. That's what happens if you post $100,000 in bail, you get to live in the community. But these guys are not proposing to live in the community. They're proposing to be detained, except they'll get better meals. They'll be able to choose what TV programs to watch. They can have unlimited conjugal visits. They can have unlimited or almost unlimited visits by anybody at any hour of the day so long as the people are vetted. They're buying a package of individual liberties. And I'm just wondering if we can do that. Why can't anybody buy whatever set of private detention conditions they can afford? It seems to me that Bustani is well considered and it is binding on us one way or the other. Because otherwise we're in a bizarre universe of smorgasbord detention. I agree, Your Honor. Okay, I get these arguments. But, you know, it sounds sort of like a policy argument, but Congress set the policy in the Bail Reform Act. So do you think that Bustani rests on this kind of intuition about what the policy should be? Or is there something in the Bail Reform Act that justifies it? So as the Court stated in Bustani, there are echoes of the 14th Amendment and not allowing a two-tiered system of justice where some defendants are allowed to make their own comfortable prison while every other defendant— It's a kind of constitutional avoidance. So even if the plain terms of the Bail Reform Act might allow this, we have to decide that Congress didn't intend it because otherwise there'd be a constitutional problem. That's the answer? At least one reason, yes, Your Honor. What are the others? I will focus on your question. So I would direct the Court to Salerno that discusses the Bail Reform Act with respect to danger. And specifically in that case, the Supreme Court noted that the language of the Bail Reform Act does allow for detention pursuant to conditions related to danger. And so in this situation, there are conditions where defendants can be detained based on their danger if there is a situation. And that leads us to the 14th Amendment. So if defendants can be detained on danger and there are conditions in which they should be detained, I guess it goes back to the 14th Amendment. I thought you were going to say that the Bail Reform Act does allow for release into someone else's protective custody where that might work, right? That's not the same thing as a private jail. That's maybe Dog the Bounty Hunter puts up the money, and we can trust him to make damn sure the person's going to show up, or more generously, that someone's parents, particularly in the case of a young person, might be able to maintain some control over a person's actions out of love or other means. And so there may be circumstances in which saying someone else is here who's prepared to vouch, that they're going to make sure that I am not a danger and that I will return. Under certain circumstances, that might be entirely appropriate to allow someone to be released into the community. That's not the same thing, it seems to me, as saying someone needs to be detained. It's just that we can create detention in a palace for that person, and that will be fine. I don't know if there's anything in the Bail Reform Act that speaks to that. What the Bail Reform Act spoke to was trying to encourage release in exchange for, unlike the very strange laws in New York, that you can explicitly consider someone's danger and decide that he needs to not be out in the community at large. That's what the Bail Reform Act was all about. That was the compromise. I don't know that we can attribute to Congress the encouragement of, you know, you can go not just to home detention, you can have an industry, right, just like we have private residential drug treatment facilities and so on, just like we have private jails that the government contracts with, you could have private jails that defendants contract with. And maybe you could, and maybe that would be good policy, and maybe that would save government money. But I think it's a long stretch to say the Bail Reform Act just dictates that something like this is permissible. You said it more eloquently than I could, Your Honor. You probably could do it. These would be interesting arguments on the motion to, I guess, the petition for certiorari and, excuse me, for reconsideration of Boustany. But Boustany is the law in this circuit, and we're following it, at least for now, right? Yes, Your Honor. That is correct. All right. Well, let's get to our rebuttals. A minute each, we'll see. Mr. Williams? Yes, Your Honor. So just two quick points. One, the focus on the Alexander brothers, all of them fleeing, was not around the world during both detention hearings in Florida and in Judge Caproni's courtroom. It was the focus that they would flee to Israel. So it's not around the world. And the fact that the idea that they'd be able to hide or flee to Israel is nonsensical. And they don't have, they have one, there's a grandmother's house there. They don't, my client, tall Alexander, does not have tremendously strong ties to Israel. All his ties are here in the United States, including his child, his infant child. The other point I'll make really quickly, because I have 17 seconds, and I'm not minimizing the six victims alleged in the substance count and what they're saying happened to them. But for this large, sprawling conspiracy, and this goes to the weight of the evidence, and I'm trying to address the Court's concern about demonstrating clear error with regard to dangerousness to the community. For a sprawling conspiracy of about 10 to 15 years, there's only, there's a conspiracy count. The government says, and this was emphasized over and over again, 40 women were interviewed. But there's only six victims in the indictment. I understand that the allegations with respect to those six victims are serious, very serious. But there's only six victims. That does not really, is not really consistent with a long, sprawling sexual trafficking conspiracy for over 10 to 15 years. And I just make that point to the Court as to the weight of the evidence and to arguing that the Court's finding of dangerousness, I guess in my opinion, was clear error based on the record. I'll stop there. All right. Thank you, Mr. Williams. Mr. Streffer. Judge Lynch, to answer your question, the statute does require the least restrictive conditions. So I could have my response. Yes. Absolutely. If a defendant, so long as they're going to appear and so long as they're not a danger, if they can be home under. . . No, even if I'm detained. Oh, no. Because why should I have to put up with the whole cluster of restraints on my liberty just because the government has to have, if they're going to detain me, these various other rules? We could arrange for something that would give me more liberty. That would be a separate constitutional issue. The statutory issue is that the defendant is not to be restrained beyond the least restrictive conditions. Right. And if that means at home, because take a look at the reply brief at page 6. There's the form by the AO. Home incarceration is contemplated by the Bail Reform Act. And so for Your Honor to sort of ridicule home incarceration as a private jail, the Bail Reform Act contemplates it. It's less restrictive than being in jail. Judge Menashi, I'd urge you to read the Sibani case. That was a case where these were folks who had ties all across the world. Their income was all across the world. They had had wire transfers from the Middle East, 17 million. This Court approved, this Court approved home incarceration with private security. Can you give me one case where we required a district court to do that? Esposito was the case where we reversed a district court's decision. I'm sorry? We reversed a district court in that? No, no. Esposito was the case where the defendant was complaining about home incarceration, appealed, and this Court required it. Well, we said that he was not entitled to something better than that. But he was a mafia guy who was allowed to go home unless restrictive conditions were met. But the government wasn't appealing that, right? I mean, you're asking us. The key thing to me in this case, apart from all the philosophical arguments, the key thing in this case is that the district court made a particular determination. And in all of the cases that I think you've cited, that has not been the case. You know, do you have a case where the district court denied home incarceration and we said, no, you have to have that?  Sabani. Sabani.  S-A-B-H-A. Sabani was the case. That's the Indian couple with the phone. Yes, exactly. They lost in the lower court, and then they kept negotiating. And then finally it came to this Court. This Court said, why can't we fashion conditions? And with all respect, Judge Caproni never considered whether our proposed conditions would work. She said she can't even consider it because she thought Bustani precluded it. But for the reasons we've argued, Bustani has that window that we fit right in because wealth is the factor. But what would wealth not be a factor for a private jail situation like you're describing? Well, if a church or a rabbi or an employer would be willing to fund, because the defendant can't, these kinds of conditions, I assume that would be okay. If the money didn't come from the defendant, I guess that would be okay under Bustani. Bustani seems to be concerned with the government's socioeconomic classification concerns. It's interesting to me the government is roaring to the rescue of people of lesser means under a constitutional avoidance principle. The government has no standing to come to this Court and say we need to worry about the conditions of the poor. If they think those people should be released, they can revisit those conditions. But they can't detain the Alexanders because of some policy interest that the judge Well, I don't think the government was coming to the defense of the poor. I think it was – I asked the question as to how we would justify the results of Bustani, and that was the reasonable answer. But the government raising constitutional avoidance to save a statute? That's remarkable. I've never heard of such a thing. The only question in this case is, as Judge Menasca, you pointed out, where in the statute does it say that this condition is prohibited? It doesn't say that at all? That's not really the only issue in this case because, I mean, I think you're really saying that Bustani is wrong, and we have to say that it's wrong to get you to where you are. No, it is wrong, but we can still fit within that narrow exception that Bustani left open because wealth was such a predominant factor. You can't detain someone just because they're wealthy. Can we all agree with that? There has to be some other factor that caused them to The district court detained your client because he's dangerous. That's not wealth. Lots of poor people are dangerous, too.  But the Court never considered whether there are conditions, because that's not enough to detain someone. Everybody who is under some condition is because personal recognizance is not good enough. The next inquiry is, are there conditions that would ameliorate the so-called danger? The Court never found that the conditions we propose would fail. That's what the Court needs to do to detain someone. Bustani doesn't say that you have to find that. Sorry? Bustani doesn't say you have to find that. The Bail Reform Act says that. Right. Again, you're really arguing that Bustani is in tension with the Bail Reform Act, and therefore, we should reverse or we should reverse what Bustani said. We have two arguments. Bustani is wrong. But even under Bustani, we fit because under Bustani, so long as wealth was a primary I think was the word, primarily because of wealth, the Court is considering this other condition, i.e., private security. That is the, according to Bustani, that's the only time. Bustani is talking about wealth as it goes to risk of flight, not as to dangerous. Well, because those were the facts of Bustani. Those defendants were charged with wire fraud. There was no claim of dangerousness. But Bustani did not reach the question of whether. The point of Bustani is if you're really wealthy and the Court says, well, you know, I'm going to detain you because you're really wealthy and that means you might leave, you can't hold it against the person to say, well, their wealth would be used to ensure that there are conditions that would discourage them from leaving. But Bustani is not talking about a situation like this where there's a finding of dangerousness and the person wants to have a Pablo Escobar-style jail. But we're not dealing with Pablo Escobar. And so we have two arguments on that. The dangerousness finding was clearly erroneous because it didn't predict future dangerousness. She was talking about what had happened eight years ago. But you're also saying, right, I mean, not only that. You're also saying that these, even if they are dangerous, if left at large, they're not being left at large, that these conditions are sufficient to mitigate the danger. Yes. That's actually what the principle thing that was talked about in Fox. It wasn't really about risk of flight so much. It was about dangerousness. And what the district court said there was that having, you know, he had very particular tastes that involved luring prostitutes to his home. But that if he was living in his parents' home and if they had 24-hour surveillance of all the entrances to the house and he was not, so we knew he wasn't going out and we knew escorts weren't going in, that would do it. And that seems to me to be the kind of argument you're making there.  Because we proposed a 58th floor condo with one door, no balcony. They'll be living there with their wives and children and the parents. We even offered to bring the whole mishpacha in if necessary. But the bottom line is there'll be nobody getting into that condo who's going to be a victim of a crime. And there's been no one who's claimed they've been victims of a crime in the last half a decade. And so we submit to the court that the district court should have considered all of these conditions because these conditions will assure appearance and safety. Thank you. All right. Well, thank you all. Well argued. We will reserve decision.